IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI

WILLIE DUNN, et al.                                                                                  PLAINTIFFS

V.                                                        CIVIL ACTION NO. 3:18-CV-200-RP

TUNICA COUNTY, et al.                                                       DEFENDANTS

## MEMORANDUM OPINION AND ORDER

The plaintiffs Willie Dunn and Paul Biggins brought this action against the defendants Tunica County, Mississippi and Sheriff Calvin "K.C." Hamp, in his individual capacity, seeking damages and other relief as a result of the plaintiffs' discharge from employment as deputies with the Tunica County Sheriff's Department. The defendants now request summary judgment. Docket 32. The plaintiffs have responded in opposition, the defendants have replied, and the matter is ripe for resolution. Having considered the parties' submissions, the court finds the defendants' motion is well taken and should be granted.

### Summary Judgment Standard

Summary judgment is warranted under Federal Rule of Civil Procedure 56(a) when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions [of the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S.

at 323. The nonmoving party must then "go beyond the pleadings" and designate specific facts showing there is a genuine issue for trial. *Id.* at 324. In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when … both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2091, 147 L.Ed.2d 105 (2000).

"Conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments do not adequately substitute for specific facts showing a genuine issue for trial." *TIG Ins. Co. v. Sedgwick James of Washington,* 276 F.3d 754 (5th Cir. 2002). "As to materiality, substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2s 202 (1986).

**Facts and Procedural History**

Angela White was hired as a patrol deputy with the Tunica County Sheriff's Department in 2013. Eugene Bridges, who was Commander over the Patrol Division at the time, assumed the role of training White and acquainting her with the roads of Tunica County, which led to a sexual relationship between the two. According to White, the sexual relationship was an unwelcome one, with Bridges using his position to intimidate her and force her to have sex with him. According to the plaintiff Willie Dunn, who was Assistant Chief Deputy Sheriff, the nature of the relationship between Bridges and White was known to others within the Sheriff's Department, including himself and Sheriff Calvin "K.C." Hamp, both of whom also knew that as

a result of the inappropriate sexual relationship between Bridges and White and the fact that Bridges was not a training officer, White received inadequate training on the roads of Tunica County.

According to White, in 2014 she and another female deputy together met with Sheriff Hamp to complain about Bridges, with each deputy describing for Hamp the sexual harassment inflicted upon her by Bridges. Nonetheless, Bridges' sexual harassment of White continued.

According to Dunn, he and White talked often. White discussed with Dunn her sexual harassment by Bridges and her meeting with Sheriff Hamp about it. White also informed Dunn that Bridges had asked White to have a sexual relationship with Dunn and then make a sexual harassment complaint against Dunn. Upon hearing this, Dunn went to Sheriff Hamp to inform him of Bridges' scheme to have White accuse Dunn of sexual harassment. Dunn and Hamp discussed the scheme, the issues White was having with Bridges, and the inadequate training White had received as a result. According to Dunn, Hamp said Bridges' scheme would not get Dunn sued – it would get Hamp sued.[1]

On September 10, 2015, White complained to Dunn about a meeting she had with Bridges the day before during which Bridges had locked the door, pulled her chair up, and put his legs between her legs, which upset her. According to Dunn, he told White that he had done all he could do by talking to the Sheriff and that whatever she needed to do, she needed to take care of it.

---

[1] The record is unclear when exactly this meeting took place. Also, Dunn gives conflicting testimony regarding whether anything other than Bridges' scheme to have White accuse Dunn of sexual harassment was discussed at this meeting. Dunn testified at his deposition that Bridges' scheme is all he remembers discussing with Hamp at this meeting, but he testified elsewhere in his deposition that the two also discussed White's inadequate training. Dunn's sworn interrogatory responses state White's inadequate training was discussed during a subsequent telephone conversation with Hamp after Dunn was terminated. Because Dunn's brief in opposition to the summary judgment motion takes the position that White's inadequate training was discussed at the earlier meeting when Dunn approached Hamp to discuss Bridges' scheme to have White accuse Dunn of sexual harassment, the court resolves this factual conflict accordingly.

That same day, White met with Commander Adrina Williams to report Bridges' sexual harassment of her. While describing the history of her sexual harassment by Bridges, White told Williams that Dunn had tried to date her and had given her money. It appeared to Williams that White was reporting sexual harassment by Dunn as well. When their meeting ended, Williams told White that she would like a written statement for the record. Later that day, White told Williams she wanted to "go after" Bridges. Williams told White that she had put Williams in a difficult position because White had mentioned Dunn as well as Bridges, to which White responded that she wanted to specifically go after Bridges.

Williams reported to Sheriff Hamp that day everything that White had told her. Hamp instructed Williams to inform Bridges of White's complaint against him, which she did that day. In response, Bridges told Williams he never forced White to do anything. In a meeting with Williams and Sheriff Hamp later that day, Bridges repeated that he never forced White to do anything and that everything that happened between them was consensual. A few days later, Sheriff Hamp placed Bridges on administrative leave and asked for his resignation. Bridges refused, and after White submitted her written statement several days later setting forth her allegations against Bridges, Hamp terminated Bridges.

Meanwhile, Dunn visited Williams' office and asked her what was going on with the matter between White and Bridges, to which Williams responded she could not say because it was under investigation.[2] Dunn's inquiry made Williams uncomfortable because no one other than White, Bridges, Sheriff Hamp and herself was supposed to know about White's complaint. Williams informed Sheriff Hamp and asked Hamp to instruct Dunn to stop speaking to her about

---

[2] According to Williams, Dunn visited her office three days in a row fishing for information about the investigation, which visits she documented in a memorandum to Sheriff Hamp. However, Dunn only testified to making one such inquiry, and so for purposes of considering summary judgment, this apparent conflict is resolved accordingly.

the investigation. Recalling that White had made statements to Williams about Dunn when complaining about Bridges, Hamp instructed Williams to place Dunn on administrative leave as well.

Williams prepared a memo from Sheriff Hamp placing Dunn on administrative leave, and when she gave it to Dunn in her office and told him he was being placed on administrative leave for a complaint of sexual harassment, Dunn became very angry, yelling and demanding to know what he had to do with it. Williams told Dunn it was because White stated he had tried to date her and had given her money, in response to which Dunn stated he had given plenty of women at the department money for lunch. Dunn's tirade continued, and Williams told him he needed to talk to the Sheriff about it. When Dunn turned to leave, Williams followed him to the door so she could lock it to keep him from returning, but Dunn turned back, continuing to demand to know what he had to do with it. Williams again told Dunn he needed to talk to the Sheriff, and Dunn kicked a garbage can into the air in the direction behind Williams.

Hamp terminated Dunn two days later, on September 23, 2015. According to Hamp, he terminated Dunn for conduct unbecoming due to his behavior towards Williams when being placed on administrative leave, and also for failing to cooperate with the investigation of White's allegations. The same day, White submitted a Charge of Discrimination with the EEOC alleging sexual harassment by the Tunica County Sheriff's Department in the form of an unwanted sexual relationship with a management official.

In response to news media inquiries regarding White's allegations of sexual harassment, Sheriff Hamp authorized Williams to release the following press release, dated September 23, 2015:

> Tunica County Sheriff's Office does not condone any activities concerning sexual harassment nor workplace harassment. Tunica County Sheriff's Office has a

> policy on harassment that is strictly enforced. Also, mandatory sexual harassment and workplace harassment in-service training has been provided to every member of the Tunica County Sheriff's Office. When a complaint is made, an investigation becomes active. Tunica County Sheriff's Office will not confirm or deny any information because of an active investigation. Several employees are being investigated at this time.

According to Hamp and Williams, this was the only public statement Hamp authorized to be made about the matter.

According to Dunn and his co-plaintiff Paul Biggins, who had resigned his Commander position at the Sheriff's Department on September 15, 2015 in order to move with his wife to Oklahoma where she had accepted a job,[3] there were news reports that Bridges, Dunn and Biggins had all been terminated from the Sheriff's Department for sexual harassment. The record in this case contains a copy of a news report, dated September 23, 2015, stating that Bridges had been fired from the Sheriff's Department for sexual harassment of a deputy, and that the Sheriff's Department was investigating several others regarding sexual harassment complaints. The report cited Adrina Williams as a source. There is another news report, dated September 29, 2015, stating that Bridges, Dunn and Biggins had been terminated because of "administration issues," and that the Sheriff's Department was investigating a harassment complaint against Bridges. Neither Dunn nor Biggins ever requested a name-clearing hearing, nor did either of them avail themselves of the Sheriff's Department's appeals process for objecting to a suspension, demotion, or termination.

According to Dunn, about a year after he was fired, Sheriff Hamp called him and told him that after having seen phone records showing many calls between Dunn and Angela White, Hamp made the decision to fire Dunn because he believed Dunn was behind White's complaint

---

[3] According to Hamp, he terminated Biggins for never reporting back to work after a September 14, 2015 active shooter incident on the campus of Delta State University in Cleveland, Mississippi, but Biggins maintains he voluntarily resigned on September 15, 2020, so this conflict is resolved accordingly.

of sexual harassment.[4]

Dunn and Biggins brought this action against Tunica County and Sheriff Hamp, in his individual capacity, asserting claims for First Amendment Retaliation, Fourteenth Amendment Equal Protection Retaliation, and Fourteenth Amendment Due Process Occupational Liberty. The defendants have moved for summary judgment on all the plaintiffs' claims. In response, the plaintiffs have conceded all claims except (1) Dunn's claim against both defendants for First Amendment Retaliation; (2) Dunn's claim against Tunica County for Fourteenth Amendment Equal Protection Retaliation; and (3) both plaintiffs' claims against Tunica County for Fourteenth Amendment Due Process Occupational Liberty. After careful consideration, the court finds the defendants are entitled to summary judgment on these claims as well.

## First Amendment Retaliation

Dunn claims the defendants violated his First Amendment right to free speech by terminating him in retaliation for opposing sexual harassment within the Tunica County Sheriff's Department. As to the specific instances of protected speech for which he was terminated, Dunn points to his communication with Sheriff Hamp to report and attempt to curtail Eugene Bridges' sexual harassment of Angela White, and also to his subsequent communication with White informing her that he had done all he could do to stop the harassment by talking to the Sheriff and that she should do whatever she needed to do, resulting in her complaint for sexual harassment against Bridges.

"While public employees are not stripped of their First Amendment right to freedom of speech by virtue of their employment, this right is not without exception." *Hurst v. Lee County,*

---

[4] According to Adrina Williams, the phone records of several employees were gathered during the investigation of White's complaint, and the records showed many communications between Dunn and White – more communications than Williams believed a high-ranking officer should be having with an ordinary deputy.

*Mississippi,* 764 F.3d 480, 484 (5th Cir. 2014) (citing *Pickering v. Board of Ed. Of Tp. High School Dist. 205, Will County, Illinois,* 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). A four-pronged test is used to determine whether a public employee's speech is entitled to protection from employer discipline. *Hurst,* 764 F.3d at 484. "A plaintiff must show that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the government defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Id.* The defendants in the present case challenge Dunn's proof as to the second and fourth prongs.

As to the second prong, the threshold inquiry is whether the employee spoke as a citizen on a matter of public concern. *Graziosi v. City of Greenville, Mississippi,* 775 F.3d 731, 736 (5th Cir. 2015) (citing *Garcetti v. Ceballos,* 547 U.S. 410, 418, 126 S.Ct. 1951, 189 L.Ed.2d 312 (2014)); *Hurst,* 764 F.3d at 784. Even if the employee spoke as a citizen, he must still show that his speech addressed a matter of public concern. *Gibson v. Kilpatrick,* 838 F.3d 476, 482 (5th Cir. 2016). Both issues are questions of law that must be decided by the court. *Graziosi,* 775 F.3d at 736.

A public employee is not speaking as a citizen – but rather in his role as an employee – when he makes statements "pursuant to [his] official duties." *Garcetti*, 547 U.S. at 421. "The reason is that when the employee's speech merely relates to the employment relationship as might occur in a private workplace, the public employer should not face constitutional scrutiny for its response." *Johnson v. Halstead,* 916 F.3d 410, 422 (5th Cir. 2019) (citing *Garcetti*, 547 U.S. at 423). The critical question under *Garcetti* is "whether the speech at issue is itself ordinarily within the scope of an employee's duties." *Lane v. Franks*, 573 U.S. 228, 240, 134 S.Ct. 2369, 189 L.Ed.2d 312 (2014). Factors to be considered include job descriptions, whether

the employee communicated with coworkers or supervisors, whether the speech resulted from special knowledge gained as an employee, and whether the speech was directed internally or externally. *Johnson,* 916 F.3d at 422. In the present case, these factors all weigh in favor of finding that Dunn's speech to Hamp was made as an employee and not as a citizen.

Dunn testified that as Assistant Chief Deputy he oversaw the investigation, narcotics, and patrol divisions, but the record is otherwise poorly developed with respect to his job description. The record includes an official job description for the position of Assistant Chief Deputy, but it shows a date of revision of January 4, 2018, long after Dunn was terminated. Further, "[f]ormal job descriptions often bear little resemblance to the duties an employee actually is expected to perform." *Garcetti,* 547 U.S. at 424-25. That said, any suggestion that Dunn's reporting to the Sheriff of misconduct or wrongdoing – occurring within divisions Dunn supervised -- fell outside his job responsibilities as Assistant Chief Deputy is simply implausible.[5] Dunn's speech to Hamp, being directed internally to a supervisor, is just the sort of "up the chain of command" communication that is routinely denied First Amendment protection. *See, e.g., Wilson v. Tregre,* 787 F.3d 322, 325 (5th Cir. 2015); *Davis v. McKinney,* 518 F.3d 304, 313 n.3 (5th Cir. 2008).

Arguing that his speech to Hamp did not result from special knowledge gained as an employee, Dunn points out that "Bridges' sexual harassment of White was generally known within the department and known to the defendant Hamp, before Dunn's report to him."

---

[5] As an aside, the court is not persuaded by the defendants' argument that because the Sheriff's Department's sexual harassment policy imposes a duty on all employees to report instances of sexual harassment, the reporting of sexual harassment therefore falls within an employee's job duties for purposes of evaluating First Amendment protection. The Fifth Circuit rejected this argument in *Wilson v. UT Health Center,* reasoning that such a rule would permit public employers to remove constitutional protection from speech on certain subjects by including those subjects within employees' reporting duties. 973 F.2d 1263, 1269 (5th Cir. 1992). For purposes of this court's First Amendment analysis, Dunn's duty to report Bridges' misconduct arose not from the Department's sexual harassment policy, but from Dunn's supervisory position over the divisions within which the misconduct occurred.

Plaintiffs' brief (Doc. #41) at 17. However, the fact that Bridges' sexual harassment of White was generally known within the department, coupled with the lack of evidence that it was known outside the department, leads to the inescapable conclusion that Dunn gained this knowledge as an employee. Based on this and the other relevant factors, the court concludes that Dunn's speech to Hamp was made as an employee and not as a citizen. This alone is fatal to Dunn's claim that his speech is protected, but even if Dunn had made his speech as a citizen, he must still show that his speech addressed a matter of public concern. His claim fails in this regard as well.

Speech involves a matter of public concern if it can be "fairly considered as relating to any matter of political, social or other concern to the community." *Graziosi, v. City of Greenville Mississippi,* 775 F.3d 731, 738 (5th Cir. 2015) (quoting *Connick v. Myers,* 461 U.S. 138, 146, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). To determine whether speech addresses a matter of public concern, the court must evaluate the "content, form, and context" of the speech, as revealed by the record as a whole. *Graziosi,* 775 F.3d at 738 (quoting *Connick,* 461 U.S. at 147-48).

Certainly, the content of Dunn's discussion with Hamp touched upon matters of public concern, such as the sexual harassment of White by Bridges and her resulting inadequate training as a patrol deputy. *See Branton v. City of Dallas,* 272 F.3d 730, 740 (5th Cir. 2001) ("Exposure of official misconduct, especially within the police department, is generally of great consequence to the public."); *White v. UT Health Center,* 973 F.2d 1263, 1269 (5th Cir. 1992) (finding reports of sexual harassment within university health center's police force to be of great public concern). However, Dunn's speech to Hamp also addressed Bridges' scheme to have White accuse Dunn of sexual harassment. In fact, this was the impetus of Dunn's speech to Hamp, and the court

would characterize it as being more of a private concern, insofar as Dunn was concerned that Bridges' misconduct now threatened to affect Dunn personally. Dunn's speech to Hamp may therefore be described as a mix of both public and private concerns.

In mixed speech cases, the court conducts a balancing of all three *Connick* factors to determine whether public or private concerns predominate. *Gibson v. Kilpatrick,* 838 F.3d 476, 487 (5th Cir. 2016); *Teague v. City of Flower Mound, Texas,* 179 F.3d 377, 382 (5th Cir. 1999). Within this balancing, the court will weigh form and context "more heavily" than content. *Gibson,* 179 F.3d at 487 (quoting *Teague*, 179 F.3d at 383). In the present case, the balancing of these factors reveals that private concerns predominate, with the speech's context being especially informative.

Dunn was not "exposing" to Hamp the sexual harassment of White by Bridges or White's inadequate training. According to Dunn, these things were generally known within the department, including by Hamp. Nonetheless, despite his supervisory position as Assistant Chief Deputy, Dunn took no action to address these matters until White told him of Bridges' scheme to have White accuse Dunn of sexual harassment. Only then, when Bridges' misconduct threatened to affect Dunn's own conditions of employment, did Dunn approach Hamp about the matter. At its core, Dunn's speech to Hamp "is akin to an internal grievance, the content of which is not entitled to First Amendment protection." *Graziosi,* 775 F.3d at 738; *see also Stotter v. University of Texas at San Antonio,* 508 F.3d 812, 827 (5th Cir. 2007) ("Internal personnel disputes and management decisions are rarely a matter of public concern."). It is clear from the record as a whole that Dunn's speech to Hamp was motivated primarily – if not exclusively – by personal concerns rather than by any concern for White or the public, and therefore the speech is not protected. *See Gillum v. City of Kerrville,* 3 F.3d 117, 120-21 (5th

Cir. 1993) (finding that although plaintiff's allegations of official misconduct addressed matter of public concern, speech was unprotected because plaintiff's focus was on issue only insofar as it impacted his own interest); *Teague,* 179 F.3d at 383-84 (finding speech unprotected where, "[a]though interspersed with apparently genuine concerns regarding police wrongdoing, [the plaintiffs'] grievances were primarily motivated by, and primarily addressed, concerns particular to their private interests").

Dunn's subsequent speech to White encouraging her to do what she needed to do because Dunn's complaint to Sheriff Hamp had gone unheeded is likewise unprotected because it was essentially a mere continuation of Dunn's up-the-chain speech to Hamp. *See Corn v. Mississippi Department of Public Safety,* 954 F.3d 268, 277-78 (5th Cir. 2020) (finding report of police misconduct to outside agency was unprotected because it was continuation of previous up-the-chain speech to employer). There is no evidence Dunn ever previously encouraged White to take any action to stop Bridges' sexual harassment. Only when Bridges' misconduct threatened to affect Dunn personally was Dunn moved to address the matter – first by approaching Sheriff Hamp and then, when that failed to result in Hamp's intervention, by telling White she needed to do whatever she had to do. Dunn's keen personal interest in White's complaint against Bridges is further evidenced by his inquiry to Adrina Williams about the status of it. In view of the *Connick* factors and the record as a whole, it appears the primary motivation for Dunn's speech both to Hamp and to White was the same – to protect his own interest. Because Dunn did not speak in either instance as a citizen on a matter of public concern, his First Amendment Retaliation claim fails as a matter of law.

### Fourteenth Amendment Equal Protection Retaliation

Dunn claims Tunica County violated his Fourteenth Amendment right to equal protection

by terminating him in retaliation for opposing sexual harassment within the Tunica County Sheriff's Department. Tunica County argues that in addition to suffering the same legal infirmities as his First Amendment Retaliation claim, Dunn's Fourteenth Amendment Equal Protection Retaliation Claim is one that has not been recognized in the Fifth Circuit as a valid cause of action. Conceding no such cause of action has been recognized in the Fifth Circuit, Dunn urges this court to follow the Second Circuit's decision recognizing such a claim in *Vega v. Hempstead Union Free School District,* 801 F.3d 72 (2nd Cir. 2015). The court will decline to do so.

The Fifth Circuit has rejected the argument that retaliation for reporting police misconduct supports an equal protection claim, holding that such a claim amounts to nothing more than a restatement of a First Amendment claim. *Thompson v. City of Starkville, Mississippi,* 901 F.2d 456, 468 (5th Cir. 1990). The Second Circuit stands alone among circuit courts in recognizing a cause of action for retaliation under the Equal Protection Clause. *See Wilcox v. Lyons,* 970 F.3d 452, 461-62 (4th Cir. 2020) (collecting cases). This court has rejected such claims. *Matthews v. City of West Point, Mississippi,* 863 F.Supp.2d 572, 604 (N.D. Miss. 2012); *Smith v. Mississippi State University,* No. 1:17-CV-35, 2018 WL 934859, *5 (N.D. Miss. Feb. 16, 2018) ("[T]he Equal Protection Clause of the Fourteenth Amendment does not support a § 1983 claim for retaliation."). Tunica County is entitled to judgment as a matter of law on this claim.

### Fourteenth Amendment Due Process Occupational Liberty

Dunn and Biggins each claims that Tunica County violated his Fourteenth Amendment right to due process by publicizing false and stigmatizing allegations of sexual harassment

against him in connection with his discharge from employment, thereby impairing his occupational liberty to pursue other employment opportunities. "[A] liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when an employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bledsoe v. City of Horn Lake, Mississippi,* 449 F.3d 650, 653 (5th Cir. 2006) (quoting *White v. Thomas,* 660 F.2d 680, 684 (5th Cir. 1981)). A plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request. *Bledsoe,* 449 F.3d at 653.

Tunica County challenges the plaintiffs' proof with respect to several of the required elements. The court finds element six to be the most clearly dispositive of both plaintiffs' claims, it being undisputed that neither of them requested a hearing to clear his name. "Though an employee need not use the term 'name-clearing hearing' to satisfy the sixth element of the stigma-plus-infringement test, the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name." *Id.* A plaintiff's due process claim fails as a matter of law if he fails to request such an opportunity. *Id.*

The plaintiffs argue that their failure to request a name-clearing hearing may be excused by the purported futility of requesting such a hearing "from the same individual who fabricated the reasons for their wrongful terminations and was not required to even afford a name-clearing hearing." Plaintiffs' brief (Doc. #41) at 26. The plaintiffs cite no authority for this "futility" argument and the court is aware of none. To the contrary, the Fifth Circuit has held that a

plaintiff's belief that a post-termination hearing would be futile does not establish a lack of post-termination opportunities to be heard or a lack of post-termination due process. *Parks v. Terrebonne Parish Consolidated Government,* 759 Fed.Appx. 220, 226 (5th Cir. 2019) (ruling within context of claim for constructive discharge without adequate due process).

Notwithstanding the plaintiffs' belief that Sheriff Hamp fabricated the reasons for their terminations, whether they stood any chance of persuading Hamp himself at a name-clearing hearing is beside the point. Such a hearing serves the purpose of "providing a public forum or opportunity to clear one's name, not actual review of the decision to discharge the employee." *Hughes v. City of Garland,* 204 F.3d 223, 226 (5th Cir. 2000) (quoting *Rosenstein v. City of Dallas,* 876 F.2d 392, 395 (5th Cir. 1989)). The plaintiffs' apparent reliance on the fact that a name-clearing hearing was not required by the Department's policies even if they had requested one is also misplaced. If the plaintiffs had requested a name-clearing hearing, and assuming they could establish all the other elements of their occupational liberty claim, a name-clearing hearing would indeed have been required – by the Due Process Clause of the Fourteenth Amendment, else there would exist in the law no cause of action for failure to afford such a hearing. The plaintiffs' futility argument is without merit, and Tunica County is entitled to judgment as a matter of law on this claim.

## Conclusion

For the above reasons, the Defendants' Motion for Summary Judgment is GRANTED. A final judgment in accordance with this order will issue forthwith.

**SO ORDERED**, this, the 5th day of January, 2021.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE